UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

CARTIER D. TASBY,               )
                                )
        Plaintiff,              )
                                )
v.                              )          No. 1:10 CV 419
                                )
DARRYL HEIMLICK, *et al.,*      )
                                )
        Defendants.             )

<u>OPINION and ORDER</u>

Cartier Tasby filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that Grant County Jail officials violated his federally protected rights while he was confined there as a pretrial detainee. The defendants are Grant County Sheriff Darryl Heimlick and jail officials Randy Albertson, Cathy Lee, and Bryan Kirkpatrick. The court screened the plaintiff's complaint pursuant to 28 U.S.C. § 1915A, granted him leave to proceed against the defendants for damages on his claim that they denied him access to legal materials to prepare for his criminal trial, and dismissed all other claims.

Defendants have filed a motion for summary judgment pursuant to FED. R. CIV. P. 56, and the plaintiff has responded. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-37 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

In his complaint, Tasby alleges that the defendants denied him access to legal materials, which interfered with his ability to represent himself against criminal charges. Tasby alleged that he was representing himself and requested access to legal materials in order to help prepare his defense, but that jail officials told him "no" (DE # 1 at 4). Tasby alleges that due to "those law library policies the inadequacy of the legal services in the jail and [the] blatant disregard for my right to represent myself, I was not allowed or able to give myself meaningful representation." (*Id.*).

In their motion for summary judgment, the defendants argue that Tasby was represented or assisted by public defenders in both of the criminal prosecutions against him. The defendants argue that Tasby had regular or stand-by counsel except for a

short period of time, during which no detrimental action was taken against plaintiff, and no deadlines were missed.

In support of their motion for summary judgment, the defendants submit documents from the criminal prosecutions against Tasby and his state court appeals, grievances he filed, portions of his deposition, and the affidavits of the defendants. Tasby responded with a memorandum of law, grievances he filed at the jail, and an outgoing mail log.

**DEFENDANTS' MOTION TO STRIKE**

The defendants filed a motion to strike large portions of the plaintiff's memorandum in opposition to their motion for summary judgment and many of the exhibits attached to his memorandum (DE # 136). The plaintiff has not responded to this motion.

The defendants ask the court to strike several paragraphs or portions of paragraphs in the plaintiff's memorandum as unsworn statements, hearsay, or irrelevant. The court declines to strike these paragraphs, but will disregard any inadmissible evidence presented in Tasby's memorandum.

The defendants also ask the court to strike exhibits four, seven, eight, nine, and ten attached to Tasby's response to their summary judgment motion. Exhibit four (DE # 132 at 23) is a mail log kept by jail officials for Tasby's outgoing mail between August 7 and November 4, 2010. The defendants object to this exhibit on the basis of "no foundation; hearsay, makers unknown; immaterial and irrelevant to the pleadings herein" (DE # 136 at 3). The plaintiff does not refer to this exhibit in his memorandum,

and this court concludes that it is irrelevant to the claims presented in this case, so the motion to strike is granted as to exhibit four.

Exhibit seven (DE # 132 at 27-39), exhibit eight (DE # 132 at 40-44), exhibit nine (DE # 132 at 45), and exhibit ten (DE # 132 at 46-49) are grievances Tasby filed while he was at the jail. None of these grievances deal with the claims that are before the court, and the court agrees with the defendants that these exhibits should be stricken as irrelevant to the claims presented in this case.

## FACTS

The parties' submissions establish that Tasby was brought to the Grant County Jail on July 25, 2010, on charges of residential entry, theft, and resisting law enforcement, and that he remained at the jail until his transfer to the Indiana Department of Correction on November 30, 2010. (DE # 119-8 ¶ 5.) Tasby elected to represent himself on these charges, but on July 28, 2010, the trial court appointed Public Defender Robert Bratch as Tasby's standby counsel, and he assisted Tasby throughout proceedings. (DE # 119-1 at 1.) On September 28, 2010 a jury convicted Tasby on the charges. (*Id.* at 3.) Bratch filed a notice of appeal on Tasby's behalf, and the public defender was notified to appoint appellate counsel for him. (*Id.* at 4.) David Payne was appointed to represent Tasby in this appeal on March 8, 2011 (*id.* at 5), and represented him throughout his appeal (DE # 119-12).

On September 24, 2010, an affidavit for probable cause was made out against Tasby, charging him with perjury. (DE # 119-3 at 1.) Tasby requested a public defender on September 29 2010, and on October 25, David Payne was appointed as his public defender. (DE # 119-4 at 1.) There were no deadlines set between these dates, nor was

4

there any other activity that would require action by Tasby. (*Id*.) On February 14, 2011, Tasby pled guilty to the perjury charge. (*Id.* at 3.)

Sheriff Darrell Heimlick established the overall policy regarding access to the Grant County Jail's law library, and the policy in effect at the jail while Tasby was housed there was that inmates who did not have attorneys could use the jail's computer law library without restriction. (DE #119-8 ¶ 4.) Cathy Lee was the Jail Commander of the Grant County Jail (DE # 119-8 ¶ 1), and was responsible for reviewing requests by inmates to use the law library. When a law library request came to Lee, she checked her computer to review the inmate's information page to see if the inmate had an attorney. (DE # 119-8 ¶ 7.) Tasby made several requests to use the computer law library, but when Lee checked the computer in each instance, the computer showed that Tasby was represented by counsel. (*Id.* ¶¶ 7-9.) On one occasion, Tasby claims he told defendant Lee in person that he needed to use the law library, but she responded "[n]o, our computer is broke. The law Library computer is broke." (DE # 119-6 at 26.)

Sheriff Heimlick, Captain Albertson, and Corporal Kirkpatrick were not personally involved in determining whether Tasby's requests for access to the law library would be granted. (DE # 119-6 ¶ 2, DE # 119-7 ¶ 4, DE # 119-11 ¶ 4.) Tasby spoke with Cpl. Kirkpatrick on one occasion to ask what the law library schedule was for his floor, but he did not identify himself or ask that Kirkpatrick help him get to the law library. (DE # 119-5 at 27.) Tasby did not speak to Sheriff Heimlick or Capt. Albertson  regarding access to legal materials. (*Id.* at 28-29.) Defendants Heimlick, Albertson, and Kirkpatrick did not give anyone instructions concerning Tasby's requests to use the law. (DE # 119-6 ¶ 3, DE # 119-7 ¶ 3, DE # 119-11 ¶ 3.)

5

On appeal from his conviction for residential entry, theft, and resisting law enforcement, Tasby argued for reversal of his conviction based upon *Bounds v. Smith*, 430 U.S. 817, 828 (1977), because of denial of access to a law library and legal materials. (DE # 119-13 at 2-4.) The Court of Appeals of Indiana found that "Tasby represented himself with the assistance of attorney Robert Bratch," and that he had waived the issue for failure to raise it at the trial court (DE # 119-16 at 15-16), but it nevertheless decided the issue on the merits, denying Tasby's request for reversal because he had court-appointed stand-by counsel to provide him access to legal materials. (*Id.* at 16.)

## LEGAL STANDARD

The plaintiff's claims implicate the First Amendment, and the Fourteenth Amendment's right to substantive due process. *Snyder v. Nolen*, 380 F.3d 279, 290 (7th Cir. 2004). "[T]he fundamental right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by *Bounds,* and show that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials." *Lewis*, 518 U.S. at 353 n.4 (emphasis in

6

original). Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency. *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986). State officials do not need to provide a prisoner with access to legal materials in a case where he is represented by an attorney. *Martin v. Tyson*, 845 F2d 1451, 1456 (7th Cir. 1988) (finding no constitutional violation where jail officials denied a prisoner access to legal materials in his criminal case where he was represented by counsel on his criminal charges).

### CLAIMS AGAINST SHERIFF HEIMLICK AND JAIL OFFICIALS ALBERTSON AND KIRKPATRICK

Tasby's complaint did not specify whether his claim for damages against Sheriff Heimlick was in his official or individual capacity, or both. A suit against an "official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Municipalities cannot be held liable for damages under § 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). For liability to attach against a municipality under § 1983, a plaintiff must show that "*deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997) (emphasis in original). "Municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final

policy with respect to the subject matter in question." *Pemaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

According to the defendants' submissions, which Tasby does not dispute, the policy in effect at jail while Tasby was housed there was that inmates who did not have attorneys could use the jail's computer law library, but that inmates represented by attorneys were not entitled to access to the law library. (DE # 119-8 ¶ 4.) This policy comports with *Bounds* and *Martin*, and Tasby has produced no admissible evidence that Sheriff Heimlick ordered a departure from the policy in his case. Accordingly, Tasby has not stated an official capacity claim against Sheriff Heimlick.

Tasby also presents a personal capacity claim for damages against the defendants. Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

Defendants have submitted evidence that defendants Heimlick, Albertson, and Kirkpatrick had no personal involvement in deciding whether or not Tasby's requests for access to the law library would be granted, and Tasby has not provided admissible

evidence contesting this claim. Accordingly, he has stated no personal capacity damage claim against defendants Heimlick, Albertson, and Kirkpatrick.

Tasby filed several grievances while he was at the Grant County Jail regarding access to legal materials. (DE # 119-10.) But even if defendants Heimlick, Albertson, and Kirkpatrick were aware of Tasby's grievances, that does not make them liable for damages under § 1983. "Only persons who cause or participate in the [constitutional] violations are responsible" for those violations. *George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007). Ruling against a prisoner's grievance "does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not. " *Id.* at 609-10.

## CLAIMS RELATED TO THE CHARGES
## AGAINST TASBY FOR PERJURY

The parties' submissions establish that the perjury charge against Tasby was brought on September 24, 2010 (DE # 119-3 at 1), that he requested a public defender, and that on October 25 the trial court appointed David Payne to represent him (DE # 119-4 at 1). The record also establishes that there were no deadlines set between these dates, nor was there any other activity that would require action by Tasby. (*Id.*) Payne continued to represent Tasby until he pled guilty on February 14, 2011. (*Id.* at 3.)

To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by *Bounds,* and show that he suffered actual injury. *Lewis*, 518 U.S. at 351. State officials do not need to

provide a prisoner with access to legal materials in a case where he is represented by an attorney. *Martin*, 845 F.2d at 1456.

Defendants have produced evidence that during the month before counsel was appointed to represent Tasby on his perjury charge, there were no deadlines and therefore no need for Tasby to have access to the law library, and Tasby has not provided admissible evidence contradicting these facts. Accordingly, even assuming that defendant Lee wrongfully denied him access to legal materials between September 24 and October 25, 2010, Tasby has not established a valid claim of denial of access to legal materials because he has not produced admissible evidence that he suffered any actual injury. *Lewis*, 518 U.S. at 351. Delay and inconvenience do not rise to the level of a constitutional deficiency. *Campbell*, 787 F.2d at 229. After October 25, 2010, Tasby suffered no injury at all from lack of access to the jail law library because after that date he was continuously represented by counsel. *Martin*, 845 F2d at 1456. Accordingly, the defendants are entitled to summary judgment on this claim.

In the alternative, defendants argue that they are entitled to summary judgment on the perjury claim under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), which provides that if the remedy sought under § 1983 would require a finding or judgment that would render a conviction or sentence invalid, a § 1983 plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-487.

The *Heck* doctrine applies to "access to courts" claims. *Nance v. Vieregge*, 147 F.3d 589, 591-92 (7th Cir. 1998).

If this court were to conclude that Tasby was entitled to damages because he was convicted of perjury because he lacked access to legal materials necessary to prepare a valid defense, that would undermine his conviction. Accordingly, before Tasby may bring a § 1983 claim for damages on this claim, he would have to get his perjury conviction set aside, reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.

## CLAIMS RELATED TO THE CHARGES AGAINST TASBY FOR RESIDENTIAL ENTRY, THEFT, AND RESISTING LAW ENFORCEMENT

Tasby asserts that he was denied access to the jail law library and legal materials during the time he was being prosecuted for residential entry, theft, and resisting law enforcement. But even if jail officials fail to provide an inmate the assistance required by *Bounds*, he must show actual injury in order to prevail on this claim. *Lewis*, 518 U.S. at 351. "A person claiming denial of access must prove that he suffered an actual injury by showing that unjustified acts or conditions hindered his ability to pursue a nonfrivolous legal claim . . . without a showing 'that the defendants prevented him from pursuing a nonfrivolous legal action,' a prisoner cannot prove a constitutional violation." *Johnson v. Barczak*, 338 F.3d 771, 772 (7th Cir. 2003) (quoting *Tarpley v. Allen County, Indiana*, 312 F.3d 895, 899 (7th Cir. 2002)).

Jail officials who deny an inmate access to legal materials do not violate his constitutional rights if the prisoner is represented by an attorney in a criminal

prosecution. *Martin*, 845 F.2d at 1456. The parties' submissions establish that while Tasby was not represented by counsel on the residential entry, theft, and resisting law enforcement charges, he was assisted by stand-by counsel for these charges. The defendants argue that stand-by counsel also satisfies the *Martin* exception.

In *Howland v. Kilquist*, 833 F.2d 639 (7th Cir. 1987), a public defender was appointed to represent Howland, but apparently he was dissatisfied with his public defender, and filed a motion to proceed *pro se* in his criminal case. The trial court granted this motion, but appointed the public defender as "standby counsel." Prior to trial, Howland requested various law books, but jail officials refused to provide them to him.  Howland then represented himself, with assistance of stand-by counsel, and was convicted of the charges against him.

The Seventh Circuit concluded that appointment of standby counsel satisfied the constitutional obligations of the state, stating that "no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he chose to refuse the services of court-appointed counsel." *Howland*, 833 F.2d at 643. The Seventh Circuit held that the court's offer of appointment of counsel in the criminal proceedings,"and the appointment of standby counsel, satisfied any obligation which the state had to provide Howland with legal assistance." *Id.*

In *United States v. Byrd*, 208 F.3d 592 (7th Cir. 2004), a prisoner alleged that he was denied access to legal material because he was being held in a county jail and did not have access to a law library, which deprived him of the ability to adequately represent himself. The Seventh Circuit concluded that:

> The short answer to his complaint is that when a person is offered appointed counsel but chooses instead to represent himself, he does not have a right to access to a law library. *See United States v. Chapman*, 954 F.2d 1352 (7th Cir.1992). The rule is that he has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up.

*Byrd*, 208 F.3d at 593; *see also United States ex rel George v. Lane*, 718 F.2d 226, 227 (7th Cir.

1983) (inmate did not have a right to insist on access to a law library when he had been

offered competent counsel, and refused the services of that counsel; the state fulfilled its

constitutional obligation once counsel was offered).

It is uncontradicted that Tasby was offered appointed counsel, and that he had

the benefit of stand-by counsel at all times before his conviction. Because Tasby was

being assisted by stand-by counsel, he was not entitled to access to the jail's law library,

and even if defendant Lee denied him access to the law library, she is entitled to

summary judgment under *Howland*.

In the alternative, the defendants argue that the law library claims relating to

plaintiff's first series of charges are barred by *res judicata* and/or collateral estoppel.

> Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The three requirements for *res judicata* under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits. If these requirements are fulfilled, *res judicata* bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action. Simply put, the doctrine of *res judicata* provides that, when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

13

*Highway J Citizens Group v. United States DOT*, 456 F.3d 734, 741 (7th Cir. 2006)

(quotation marks and citations omitted).

Since the earlier judgment the defendants seek to rely on is a state court

judgment, federal courts look to Indiana law to determine the earlier judgment's *res*

*judicata* effect. *Allen v. McCurry*, 449 U.S. 90 (1980). *Res judicata*, under the principles of

law followed by the Indiana courts, occurs when there is a final judgment on the merits,

at which time all claims between the parties which could have been litigated or were

actually litigated are barred in all subsequent suits. *See, e.g., Leal v. Krajewski*, 803 F.2d

332, 333-35 (7th Cir. 1986).

As with *res judicata*, the collateral estoppel effect of the prior proceedings is

determined by Indiana law. *Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009.

Under Indiana law, collateral estoppel bars subsequent litigation of an issue

"necessarily adjudicated in a former suit if the same issue is presented in the subsequent

suit." *Id.* (citing *Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 257

(Ind. 2003)). Collateral estoppel requires a final judgment on the merits in the first suit.

*Id.*

In *Studio Art Theatre of Evansville, Inc. v. Gann*, 76 F.3d 128 (7th Cir. 1996), the

theater and its president were convicted in state court of violating the state racketeering

act, and then filed a suit in federal court pursuant to § 1983, alleging that the statute

violated various provisions of the United States Constitution. The district court

dismissed the complaint, holding that "both the Indiana trial court and Court of

Appeals had held that the Indiana statute was constitutional, so that 'the doctrines of *res judicata* and collateral estoppel apply to an attempt to relitigate issues previously decided by those courts.'" *Id.* at 130. The Seventh Circuit held that the doctrines of *res judicata* and collateral estoppel precluded the plaintiffs from relitigating their claims since the issue had been implicitly decided against them in their criminal proceeding. *Id.* at 131.

In this case, the question Tasby seeks to relitigate, that denial of access to a law library and legal materials prevented him from being able to prepare a defense to criminal charges for residential entry, theft, and resisting law enforcement was explicitly decided against him in his criminal appeal. Accordingly, the doctrines of *res judicata* and collateral estoppel preclude him from relitigating that claim in this case.

## QUALIFIED IMMUNITY

The defendants argue, in the alternative, that even if this court were to conclude that they violated Tasby's right of access to the courts, they are entitled to qualified immunity on the claims against them. Government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining qualified immunity involves a two-step test; a plaintiff seeking to defeat a defense of qualified immunity must establish first a deprivation of a constitutional right, and second, that the right in question was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the state of the law when the incident occurred would not put an

15

official on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.

This court has already concluded that the defendants did not deprive Tasby access to the jail's law library and legal materials in violation of *Bounds*, and that Tasby suffered no actual injury from the defendants' actions. Accordingly, the court will not address the defendants' qualified immunity arguments on these claims.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike (DE # 136) is **GRANTED.** Defendants' motion for summary judgment (DE # 117) is also **GRANTED,** and the Clerk is **DIRECTED** to enter final judgment as follows:

"Judgment is entered in favor of defendants Darryl Heimlick, Randy Albertson, Cathy Lee, and Billy Kirkpatrick; and against plaintiff Cartier Tasby, who shall take nothing by way of his complaint."

**SO ORDERED.**

Date: February 19, 2013

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT